OPINION OF THE COURT
Gustin L. Reichbach, J.
*719 On January 3, 2006, the District Attorney’s Office of Kings County submitted an ex parte application to the court seeking an order releasing from the New York City Police Department Property Clerk’s office the sum of $5,076 that was seized in connection with the execution of a search warrant and which also resulted in the arrest of three defendants. In its ex parte application, the District Attorney’s Office claims that “it is in the best interest of justice that the property be turned over to the United States Department of Justice, United States Drug Enforcement Administration for the purpose of commencing Federal forfeiture procedures by the United States Attorney’s Office for the Eastern District of New York.” Not a single reason is provided in the applicant’s papers as to why this turnover is “in the best interest of justice.” Nor is it clear for what reason and by what authority this motion is made ex parte and without notice.*
This court shares the concerns of the court in Matter of Four Thousand One Hundred & Ninety Dollars (167 Misc 2d 1032 [1996]), that divesting physical and legal control of the property might have legal and logistical consequences for the trial of the defendants arrested in connection with this seizure. However, this court’s focus is on New York’s statutory seizure and forfeiture rules rather than due process considerations.
New York State has enacted a thorough and comprehensive statutory scheme relating to the forfeiture of proceeds of crimes. (See, CPLR 1310-1352 [art 13-A].) Additionally, article 480, §§ 480.00 through 480.35 of the Penal Law provide another mechanism for forfeiture under New York law in narcotics cases.
The District Attorney does not invoke either of those forfeiture statutes. Instead, the District Attorney claims that this court has the jurisdiction to authorize a transfer of property seized pursuant to a search warrant, under CPL 690.55. While the District Attorney claims that this section “authorizes the Court to relinquish control of seized property,” in fact, the *720 thrust of the section requires that the court retain and. safeguard such property. Indeed, CPL 690.55 (1) reads as follows:
“1. Upon receiving property seized pursuant to a search warrant, the court must either:
“(a) Retain it in the custody of the court pending further disposition thereof pursuant to subdivision two or some other provision of the law; or
“(b) Direct that it be held in the custody of the person who applied for the warrant, or of the police officer who executed it, or of the governmental or official agency or department by which either such public servant is employed, upon condition that upon order of such court such property be returned thereto or delivered to another court.”
The District Attorney contends that the phrase “some other provision of the law” in the retention subdivision (a) above, permits the court, at the District Attorney’s request, to turn over potentially forfeitable monies to a federal agency that has had absolutely no connection with this case. Here, New York City police officers applied to the New York State Supreme Court for the search warrant. New York City police officers executed the warrant, seized the subject property and made three arrests. The District Attorney has informed the court that its office intends to prosecute these three individuals on state narcotics charges. In short, to date there has been absolutely no federal involvement in this case.
As previously noted, the New York State Legislature has enacted a comprehensive and detailed statutory scheme providing for the forfeiture of the proceeds of crime. A not inconsequential part of this statute, CPLR 1349, deals with the disposition of forfeited property. In addition to recouping the cost of investigation and prosecution under section 1349 (2) (e), a substantial portion (40%) is earmarked for a substance abuse service fund (CPLR 1349 [2] [g]), with the balance of the monies to go to general law enforcement purposes and arrest and prosecutorial services. This distribution provision is specifically adopted in the Penal Law (Penal Law § 480.20). The taxpayers of New York, whose public officials (police, district attorneys, courts) have been the only ones involved in this investigation, are the potential beneficiaries, should it ultimately be determined that these seized monies are forfeitable as proceeds of a crime.
In the view of this court, a plain reading of the statute would suggest that where there has been no previous federal involve *721 ment in the case, a court lacks statutory authority to grant the instant request and turn over these funds to a federal authority. Even if the court had discretionary authority to do so, which seems an overly expansive reading of the legislative intent, it would not exercise its discretion under these circumstances. While the court understands there is a sharing arrangement in which the federal authority would rebate some of the money back to the state authorities, the interests of justice would not be served if the citizens of the state were to yield any of these proceeds to federal authorities who have otherwise had no connection with this case.

 Whether or not due process requires notice to an affected party before such transfer can be made awaits resolution on another day. The court in Matter of Four Thousand One Hundred & Ninety Dollars (167 Misc 2d 1032 [Columbia County Ct 1996]) suggests that there may be no due process notice right to possible claimants regarding the transfer of such sums between sovereigns. Yet that suggestion seems at variance with that court’s determination that such funds must be retained by the court until the conclusion of all New York criminal proceedings: “The legal . . . consequences of the unavailability of property . . . upon the conduct of a criminal case in State court are too obvious to require enumeration” (at 1033-1034); a finding that itself appears partly rooted in due process considerations.